UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MALINDA MALLEY                                    CIVIL ACTION

VERSUS                                            NO. 11-614

MICHAEL J. ASTRUE, COMMISSIONER                   SECTION "N" (2)
OF SOCIAL SECURITY ADMINISTRATION

## FINDINGS AND RECOMMENDATION

Plaintiff, Malinda Malley, seeks judicial review pursuant to Section 405(g) of the

Social Security Act (the "Act") of the final decision of the Commissioner of the Social

Security Administration (the "Commissioner"), denying plaintiff's claim for disability

insurance benefits ("DIB") and disabled widow's benefits under Title II and

supplemental security income benefits ("SSI") under Title XVI of the Act. 42 U.S.C. §§

405(g), 423, 1381a. This matter was referred to a United States Magistrate Judge

pursuant to 28 U.S.C. § 636(b) and Local Rule 73.2(B).

## I.     PROCEDURAL HISTORY

Malley filed applications for DIB, disabled widow's benefits and SSI on

November 24, 2006, alleging disability since October 15, 2006, due to chronic

obstructive pulmonary disease, osteoporosis and depression. (Tr. 123-25, 134-43, 150).

After her applications were denied, plaintiff requested a hearing before an Administrative

Law Judge ("ALJ"), which was held on November 12, 2008. (Tr. 23-48). On January

14, 2009, the ALJ issued a decision denying plaintiff's applications for benefits. (Tr. 13-22). After the Appeals Council denied review on January 13, 2011, the ALJ's decision became the final decision of the Commissioner for purposes of this court's review. (Tr. 1-5).

II.   STATEMENT OF ISSUES ON APPEAL

Plaintiff contends that the ALJ made the following errors:

A.   The findings of the vocational expert are erroneous in misinterpreting "light work."

B.   The ALJ's hypothetical question to the vocational expert did not include limitations on plaintiff's use of her hands.

III.   ALJ'S FINDINGS RELEVANT TO ISSUES ON APPEAL

The ALJ made the following relevant findings:

1.   To establish entitlement to disabled widow's benefits, Malley must establish that her disability began on or before December 31, 2008.[1] She has acquired sufficient quarters of coverage to remain insured for DIB through September 30, 2010.

2.   Plaintiff has not engaged in substantial gainful activity since the alleged onset date of October 15, 2006.

---

[1]   To qualify for disabled widow's benefits, a claimant must establish that she is not married, is between 50 and 60 years old, and has a physical or mental impairment or impairments . . . so severe as to preclude her from engaging in any gainful activity. Also, the claimant must show her disability began no later than seven years after the wage earner's death or seven years after she was last entitled to survivor's benefits. Abshire v. Astrue, No. CV07-1856-LC, 2008 WL 5071891, at *1 (W.D. La. Oct. 29, 2008), report & recommendation adopted, 2008 WL 5746955 (W.D. La. Dec. 1, 2008) (citing 42 U.S.C. § 402(e); 20 C.F.R. § 404.335)).

3. She has severe impairments consisting of chronic obstructive pulmonary disease and osteoarthritis.

4. Malley was diagnosed with bilateral carpal tunnel syndrome based on a nerve conduction study on November 3, 2008. In the absence of any prior diagnosis, she has not established that this condition has lasted or can be expected to last for a continuous period of 12 months. This condition does not satisfy the duration requirements of a severe impairment.

5. Plaintiff has the residual functional capacity to perform light work, with the added limitations that she must avoid even moderate exposure to dust, fumes, gases and poor ventilation; must avoid climbing ladders, ropes and scaffolds; and can only stand or walk for two hours out of an eight-hour day.

6. Although Malley's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

7. Based on vocational expert testimony, plaintiff is capable of performing her past relevant work as a waitress, which is light work.

(Tr. 15-21).

IV. ANALYSIS

A. Standards of Review

The function of this court on judicial review is limited to determining whether there is substantial evidence in the record to support the final decision of the Commissioner as trier of fact and whether the Commissioner applied the appropriate legal standards in evaluating the evidence. Perez v. Barnhart, 415 F.3d 457, 461 (5th Cir.

2005); Waters v. Barnhart, 276 F.3d 716, 716 (5th Cir. 2002); Loza v. Apfel, 219 F.3d 378, 390 (5th Cir. 2000).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  Richardson v. Perales, 402 U.S. 389, 401 (1971); Perez, 415 F.3d at 461; Loza, 219 F.3d at 393.  This court may not "reweigh the evidence in the record, try the issues de novo or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision." Newton v. Apfel, 209 F.3d 448, 452 (5th Cir. 2000).  The Commissioner, rather than the courts, must resolve conflicts in the evidence.  Id.

The ALJ is entitled to make any finding that is supported by substantial evidence, regardless whether other conclusions are also permissible.  See Arkansas v. Oklahoma, 503 U.S. 91 (1992).  Despite this court's limited function, it must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence supports it.  Perez, 415 F.3d at 461.  Any findings of fact by the Commissioner that are supported by substantial evidence are conclusive.  Id.; Newton, 209 F.3d at 452; Martinez v. Chater, 64 F.3d 172, 173 (5th Cir. 1995).

To be considered disabled and eligible for SSI, DIB or disabled widow's benefits,[2] plaintiff must show that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 to 404.1599 & appendices, §§ 416.901 to 416.998 (2008). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. Id. §§ 404.1520, 416.920; Perez, 415 F.3d at 461; Waters, 276 F.3d at

---

[2]The relevant law and regulations governing a claim for DIB are identical to those governing a claim for SSI. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994); Hollis v. Bowen, 837 F.2d 1378, 1382 n.3 (5th Cir. 1988). "[T]he standard for determining disability in a disabled-widow case is the same standard applied to other title II disability claims." Foster v. Shalala, 21 F.3d 1107, 1994 WL 171436, at *3 (5th Cir. Apr. 21, 1994) (citing 42 U.S.C. §§ 402(e), 423(d)(2)(B); Deters v. Sec'y of Health, Educ. & Welfare, 789 F.2d 1181, 1185 (5th Cir. 1986)).

716; <u>Loza</u>, 219 F.3d at 393.[3]  The five-step inquiry terminates if the Commissioner finds at any step that the claimant is or is not disabled.  <u>Perez</u>, 415 F.3d at 461.

The claimant has the burden of proof under the first four parts of the inquiry.  If she successfully carries this burden, the burden shifts to the Commissioner to show that other substantial gainful employment is available in the national economy that the claimant is capable of performing.  When the Commissioner shows that the claimant is capable of engaging in alternative employment, the burden of proof shifts back to the claimant to rebut this finding.  <u>Id.</u>; <u>Newton</u>, 209 F.3d at 453.

---

[3]The five-step analysis requires consideration of the following:

First, if the claimant is currently engaged in substantial gainful employment, he or she is found not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

Second, if it is determined that, although the claimant is not engaged in substantial employment, he or she has no severe mental or physical impairment which would limit the ability to perform basic work-related functions, the claimant is found not disabled.  <u>Id.</u> §§ 404.1520(c), 416.920(c).

Third, if an individual's impairment has lasted or can be expected to last for a continuous period of twelve months and is either included in a list of serious impairments in the regulations or is medically equivalent to a listed impairment, he or she is considered disabled without consideration of vocational evidence.  <u>Id.</u> §§ 404.1520(d), 416.920(d).

Fourth, if a determination of disabled or not disabled cannot be made by these steps and the claimant has a severe impairment, the claimant's residual functional capacity and its effect on the claimant's past relevant work are evaluated.  If the impairment does not prohibit the claimant from returning to his or her former employment, the claimant is found not disabled.  <u>Id.</u> §§ 404.1520(e), 416.920(e).

Fifth, if it is determined that the claimant cannot return to his or her former employment, then the claimant's age, education, and work experience are considered to see whether he or she can meet the physical and mental demands of a significant number of jobs in the national economy.  If the claimant cannot meet the demands, he or she will be found disabled.  <u>Id.</u> §§ 404.1520(f)(1), 416.920(f)(1).  To assist the Commissioner at this stage, the regulations provide certain tables that reflect major functional and vocational patterns.  When the findings made with respect to a claimant's vocational factors and residual functional capacity coincide, the rules direct a determination of disabled or not disabled.  <u>Id.</u> § 404, Subpt. P, App. 2, §§ 200.00-204.00, 416.969 ("Medical-Vocational Guidelines").

The court "weigh[s] four elements of proof when determining whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) [her] age, education, and work history." Martinez, 64 F.3d at 174.

B.    Factual Background

Malley testified that she was diagnosed with chronic obstructive pulmonary disease with asthma by "Dr. Hugo" when she was admitted to North Oaks Hospital for six days in 2006.[4]  She said that, after that admission, she went to her primary care doctor, Dr. Paretti,[5] who "kept telling me about the disconnecting tissue disease,[6] but she could not pinpoint exactly if I had that or not, so she started sending me to different doctors."  (Tr. 43-44).  Plaintiff stated that she went to the emergency room at Earl K.

---

[4]According to the medical records, plaintiff's treating physician when she was admitted to North Oaks Hospital on November 28, 2006 was Hugo A. Valdes, M.D.

[5]It appears from the medical records that Paretti is actually a nurse practitioner at Lallie Kemp Medical Center.  (Tr. 409).  "Nurse practitioners (NPs) are registered nurses who are prepared, through advanced education and clinical training, to provide a wide range of preventive and acute health care services to individuals of all ages.  NPs complete graduate-level education preparation that leads to a master's degree."  American College of Nurse Practitioners website, http://www.acnpweb.org/i4a/pages/index.cfm?pageid=3479 (visited on Jan. 25, 2012).

[6]This may be a transcription error.  According to the medical records, the possible diagnosis was "mixed connective tissue disease" (Tr. 328, 438), which "is an uncommon autoimmune disorder that causes overlapping features of primarily three connective tissue diseases – lupus, scleroderma and polymyositis.  Mixed connective tissue disease also may have features of rheumatoid arthritis."  Mayo Clinic website, http://www.mayoclinic.com/health/mixed-connective-tissue-disease/DS00675 (last updated Feb. 20, 2010).  On the other hand, plaintiff completed a Disability Report – Appeal in 2007 in which she listed "disconnecting tissue disease" as a recent diagnosis.  (Tr. 179).

Long Hospital many times in 2007 for severe pain in her legs, hands and lower back. She said that her doctors "never did come up with a diagnosis other than the possible disconnecting tissue disease with the fibromyalgia."

Plaintiff testified that, for her chronic obstructive pulmonary disease, she takes a preventive medicine called "Aver,"[7] an albuterol spray twice a day or as needed, and two breathing treatments daily. She stated that her doctor had increased the dosage of her Aver. (Tr. 44). As to fibromyalgia, she said that she has severe pain in her hands all the time, her muscles hurt constantly and she can barely get out of bed most of the time. She stated that she also stays in bed because she is short of breath and very tired all the time.

Malley said that, on a typical day, she gets up and brushes her teeth, but her granddaughter brushes her hair for her because her hands are numb. She testified that her daughter and granddaughter live with her. (Tr. 45). She stated that she gets dressed and eats breakfast after her granddaughter leaves for school, then she goes back to bed for most of the day. (Tr. 45-46). She said her daughter takes care of most of the household chores and that her mother, who lives next door, helps her daughter with the cooking. She stated that she has no hobbies and watches very little television, but likes to read spiritual books and the Bible. (Tr. 46). She has a driver's license and said that she drives a car with an automatic transmission when she drives, which is not often. She stated that

_____

[7]This is a probable transcription error. Plaintiff's medications list includes Advair. (Tr. 182).

her mother drove her to the hearing and that either her mother or her daughter take her wherever she needs to go. (Tr. 46-47, 48).

Plaintiff testified that she can walk about 50 feet, which is the distance from her house to the post office. She said she has to stop when she arrives because her legs and feet hurt and she is out of breath and very tired. She estimated she could stand for five to ten minutes. She stated that her daughter and granddaughter wash the dishes and wash and fold the clothes for the household. (Tr. 47).

When asked how much weight she could lift, Malley responded, "maybe about the size of a pencil or something" because her hands stay numb and painful, so that she cannot hold anything. She said she cannot grip to pick up change from a flat surface and would drop the coins unless she slid them off the surface and into her hand. (Tr. 47-48). She testified that, when she drives, she grips the steering wheel with one hand and that her hands are very numb and painful and she is also out of breath after about five minutes, which is the time it takes to drive to the grocery store from her house. She stated that her most comfortable position is lying down and that she can only sit for about 30 minutes before her back hurts. (Tr. 48).

Malley testified that her doctor has recommended surgery for her carpal tunnel syndrome and that she had an appointment on April 23, 2009 to see an orthopedic surgeon at Earl K. Long Hospital, where there is a long waiting period. She said she had

been having trouble grasping or manipulating objects with her fingers for about eight to twelve months. She said she had some difficulty before that, but the problem had worsened during that time.

Upon questioning by her attorney, plaintiff testified that she gets very tired and short of breath because of her chronic obstructive pulmonary disease. She said she quit smoking ten years ago. (Tr. 49). She stated that she can raise her arms over her head without any problem, but cannot reach in front to push or pull anything because of the numbness, pain, tingling and burning sensation in her hands and that she cannot hold a cup or glass. She said she cannot bend, crawl or stoop. (Tr. 49-50).

Malley testified that she tried to work in February 2008 at a doughnut shop as a cashier and cleaning off tables, but she only worked about four weeks because she could not do the work. The ALJ determined that this was not past relevant work. (Tr. 52).

C.    Vocational Expert Testimony

A vocational expert, Patricia Knight, testified at the hearing that plaintiff's past relevant work as both a home attendant for the elderly and a truck driver were semi-skilled at a medium exertional level; her work as a bartender and waitress were also semi-skilled, but at the light level; and her work as a home and business cleaner was unskilled and medium. (Tr. 51).

The ALJ posed a hypothetical of an individual with the same age, education and past relevant work experience as plaintiff with the residual functional capacity for light work, except that she must avoid even moderate exposure to fumes, gases, odors, dust and poor ventilation; can never climb ladders, ropes or scaffolds; and can sit for six hours and stand or walk for two hours in an eight-hour day. Knight testified that such a person could perform the past relevant job of waitress and probably bartender, although she had some reservations about the bartender job because of the increased exposure to smoke.

Plaintiff's attorney modified the hypothetical to include the claimant's need to recline at will during the day. Knight testified that such a limitation would eliminate all work. (Tr. 53). Plaintiff's attorney then modified the hypothetical to include a moderate problem with grasping, handling and fingering that occurred occasionally, which he defined as occurring during one-third of the day. Knight testified that this restriction would eliminate waitress and bartender work. (Tr. 54-55).

D.  Medical Evidence

I have reviewed the medical records in evidence and the ALJ's summary of the medical evidence. (Tr. 16, 18-20). I find the ALJ's summary of the medical evidence substantially correct and incorporate it herein by reference, with the modifications, corrections and highlights noted below.

E.    Plaintiff's Appeal

    1.    The ALJ and vocational expert did not misinterpret "light work."

At the fourth step of the sequential evaluation, the ALJ must determine, based on all of the relevant medical and other evidence in the record, the claimant's residual functional capacity, which is her ability to do physical and mental tasks on a sustained basis despite limitations from her impairments.  Cline v. Astrue, 577 F. Supp. 2d 835, 847-48 (N.D. Tex. 2008) (citing Perez, 415 F.3d at 462; 20 C.F.R. § 416.945(a)(3)).  In determining residual functional capacity, "the Commissioner must consider all of a claimant's impairments, including those that are not severe."  Giles v. Astrue, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. §§ 404.1520(e), 404.1545).

The ALJ found that Malley has the residual functional capacity to perform light work, with the added limitations that she must avoid even moderate exposure to dust, fumes, gases and poor ventilation; must avoid climbing ladders, ropes and scaffolds; and can sit for six hours and stand or walk for two hours out of an eight-hour day.  Based on the testimony of Knight, the vocational expert, in response to the ALJ's hypothetical question that incorporated these limitations, the ALJ held that plaintiff can perform her past relevant work as a waitress.

The job of waitress is defined as light work both by Knight in her testimony and in the Dictionary of Occupational Titles (available at http://www.occupationalinfo.org).

Malley contends that the ALJ improperly described her residual functional capacity as capable of doing light work, when the actual parameters of his hypothetical indicated that she could perform no more than sedentary work. Therefore, she argues that Knight incorrectly opined that plaintiff could perform her past relevant light work as a waitress.

The Commissioner's regulations define light and sedentary work, as follows.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b).

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

Id. § 404.1567(a).

These definitions do not contain any specific length of time that the worker must be able to spend standing and/or walking. However, Social Security Ruling 83-10 "elaborates on the definition of 'sedentary work' and explains that 'standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday.'" Johnson v. Astrue,

291 F. App'x 548, 551 (5th Cir. 2008) (citing Social Security Ruling 83-10, 1983 WL 31251, at *5 (1983)).[8] As to light work, Social Security Ruling 83-10 also clarifies that "'[f]requent' means occurring from one-third to two-thirds of the time. Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." Social Security Ruling 83-10, 1983 WL 31251, at *5.

Malley argues that the ALJ's hypothetical, in which he told the vocational expert that the claimant had the residual functional capacity for light work, but that she can sit for six hours and stand and/or walk for only two hours in an eight-hour day, actually posited a claimant with the capacity for sedentary work only. I cannot accept this argument.

The Commissioner's definitions and Social Security Ruling 83-10 describe the requirements for a <u>full range of work</u> at a particular exertional level. However, a person may have a residual functional capacity that falls below a particular full range of work, yet still have the "ability to engage in substantial gainful work where his or her residual functional capacity falls between the ranges of work indicated in the rules (e.g., the individual who can perform more than light but less than medium work)." 20 C.F.R. Pt.

---

[8]"'The Social Security Administration's rulings are not binding on this court, but they may be consulted when the statute at issue provides little guidance. The Fifth Circuit has frequently relied upon the rulings in evaluating ALJ's decisions.'" <u>Id.</u> (quoting <u>Myers v. Apfel</u>, 238 F.3d 617, 620 (5th Cir. 2001)).

404, Subpt. P, App. 2, § 200.00(d); <u>see, e.g.</u>, <u>Mayes v. Astrue</u>, No. 08-10306, 2008 WL 5069750, at *2 (5th Cir. Dec. 2, 2008) ("The ALJ determined that Appellant's impairments resulted in functional limitations and restricted Appellant to less than a full range of medium-level work."); <u>Carey v. Apfel</u>, 230 F.3d 131, 145 (5th Cir. 2000) ("The ALJ determined that Carey retained the residual functional capacity to perform light, unskilled work, as limited by the inability to use the left arm and hand, the need to have a sit-stand option to accommodate Carey's limitations in that regard, and the need to work in a climate controlled environment.").

The ALJ in this case did <u>not</u> determine that Malley can perform the <u>full</u> range of light work. As to the exertional requirements of light work, the ALJ found that plaintiff can perform the necessary levels of lifting, carrying, pushing and pulling, but is limited in her ability to stand and/or walk to only two hours per day, with the additional nonexertional limitations noted in the hypothetical question.[9] Because Malley is limited to less than a full range of light work, the ALJ properly used the testimony of a vocational expert to determine what work Malley is capable of performing.

---

[9]Exertional abilities are the primary strength activities of sitting, standing, walking, lifting, carrying, pushing and pulling. 20 C.F.R. § 404.1545(b); Social Security Ruling 83-10, 1983 WL 31251, at *2. Non-exertional impairments "do not directly affect the ability to sit, stand, walk, lift, carry, push, or pull. This includes impairments which affect the mind, vision, hearing, speech, and use of the body to climb, balance, stoop, kneel, crouch, crawl, reach, handle, and use of the fingers for fine activities." <u>Id.</u> at *6.

> "[W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations," 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2) (1991), or "[w]here exertional limitations prevent the claimant from doing the full range of work specified in his assigned residual function category," Campbell [v. Bowen, 822 F.2d 1518, 1523 n.2 (10th Cir.1987)], the grids "do not direct a conclusion of disabled or not disabled." 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(a). In such a case, vocational expert testimony is required to determine whether jobs exist for someone with the claimant's precise disabilities.

Trimiar v. Sullivan, 966 F.2d 1326, 1333 (10th Cir. 1992) (additional quotation and citation omitted) (emphasis added); accord Harris v. Barnhart, 204 F. App'x 447, 449 (5th Cir. 2006) (citing Newton, 209 F.3d at 458).

Malley cites the descriptions of waitress and bartender from the Dictionary of Occupational Titles, which defines both jobs as light, in support of her argument that the ALJ and vocational expert erred by finding that she could perform the requirements of her past relevant work, despite being limited to standing and/or walking for only two hours per day. However, the Dictionary of Occupational Titles

> itself acknowledges that its information "reflects jobs as they have been found to occur, but they may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities. DOT users demanding specific job requirements should supplement this data with local information detailing jobs within their community." DOT at xiii (emphasis added). Even [Social Security] Ruling 00-4p counsels that the DOT "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." 65 Fed. Reg. at 75,760. Thus, it advises reference to a VOCATIONAL EXPERT "or other reliable source of occupational information" for "more specific information about jobs or

occupations than the DOT." Id.; see also Carey v. Apfel, 230 F.3d 131, 146 (5th Cir. 2000) (noting that "the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation"). As so eloquently expressed by the Tenth Circuit: "Indeed, what would be the point of vocational testimony (or expert testimony in general) if it could not reach beyond matters already established through administrative (or judicial) notice?" Gay v. Sullivan, 986 F.2d 1336, 1340 (10th Cir. 1993).

Thompson v. Astrue, No. 8:09-01968-JFA-BHH, 2010 WL 3878729, at *5 (D.S.C. June 16, 2010), report & recommendation adopted, 2010 WL 3880047 (D.S.C. Sept. 28, 2010), aff'd, 442 F. App'x 804 (4th Cir. 2011). Thus, the generic definitions in the Dictionary of Occupational Titles are not controlling in this case.

Once the ALJ determines plaintiff's residual functional capacity, he may rely on vocational expert testimony at the fourth and/or fifth steps of the sequential evaluation to reach conclusions about the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. Villalpando v. Astrue, 320 F. App'x 208, 211 (5th Cir. 2009); Weary v. Astrue, 288 F. App'x 961, 967 (5th Cir. 2008); Carey, 230 F.3d at 145; Leggett, 67 F.3d at 565; Vaughan v. Shalala, 58 F.3d 129, 132 (5th Cir. 1995); Villa, 895 F.2d at 1022; Social Security Ruling 00-4P, 2000 WL 1898704 (Dec. 4, 2000).

In the instant case, before responding to the ALJ's hypothetical question, the vocational expert specifically clarified that the ALJ actually meant light work, but limited by the ability to stand and/or walk for only two hours. (Tr. 52-53). Within those

parameters, as well as the other restrictions regarding environmental exposure and climbing, Knight testified that plaintiff could return to her past relevant work as a waitress. Although the court is inclined to agree with Malley's argument that it seems "intuitively obvious that waitressing or bartending is not sedentary work," Record Doc. No. 22 at p. 12, Knight's testimony was substantial evidence on which the ALJ was entitled to rely that plaintiff can perform her past relevant work as a waitress with the limitations identified in the hypothetical.

The Fifth Circuit's discussion in <u>Carey</u> is analogous. In that case, the plaintiff, whose arm had been amputated below the elbow, argued that "the vocational expert's testimony that he could work as a cashier or ticket seller with one arm and hand is incredible in light of or inconsistent with the skill requirements listed for those jobs in the DOT." <u>Carey</u>, 230 F.3d at 146. Plaintiff claimed that he could not perform the jobs because, according to the <u>Dictionary of Occupational Titles</u>, they required handling and fingering for between one-third and two-thirds of the day. However, "the vocational expert specifically testified that the jobs of cashier and ticket seller could be performed with the use of only one arm and hand." <u>Id.</u> The Fifth Circuit held that

> Carey's argument actually reduces to a factual disagreement about whether a person with one arm can perform a job requiring some degree of manual dexterity and fingering. The regulatory structure as well as the controlling precedent requires expert testimony on such issues, and there is no indication in this record that the vocational expert's testimony that Carey could perform those jobs with one arm and hand was incorrect. . . . [T]he

vocational expert's clear and unchallenged testimony that Carey could perform the identified jobs with one arm and hand is adequate, in the context of this record as a whole, to support the ALJ's determination that Carey could perform other available work.

Id. at 146-47.

Even if the vocational expert and the ALJ somehow erred by finding that Malley can perform her past relevant work as a waitress, it seems not only "intuitively obvious," but legally sound, that she could perform sedentary work with the limitations identified by the ALJ's assessment of her residual functional capacity. "[A] Commissioner's finding that plaintiff is capable of performing light to less than medium work activity includes the ability to perform sedentary work." Robino v. Apfel, No. 99-1626, 2000 WL 235239, at *11 (E.D. La. Feb. 25, 2000); see also Social Security Ruling 83-10, 1983 WL 31251, at *2 (emphasis added) ("Sedentary exertional demands are less than light, which are, in turn, less than medium. In addition, [residual functional capacity] generally represents an exertional work capability for all work at any functional level(s) below that used in the table under consideration."). If Malley can lift, carry, push and pull at a light work level, can sit for six hours and can stand and/or walk for two hours in an eight-hour work day, she could perform sedentary work. Johnson, 291 F. App'x at 551; 20 C.F.R. § 404.1567(a), (b). Although vocational expert testimony would be necessary to determine at step five of the sequential evaluation the specific, available, sedentary jobs that Malley could perform with her nonexertional limitations, it is so probable as to be

virtually certain that she would be found not disabled, based on the same residual functional capacity, even if the case were remanded to the Commissioner for a step five finding.

Malley's first assignment of error therefore lacks merit.

### 2. The ALJ was not required to include limitations on plaintiff's use of her hands in his hypothetical question.

Plaintiff argues that the ALJ erred by failing to include in his determination of her residual functional capacity and in his hypothetical question to the vocational expert any limitations on the use of her hands. The ALJ found at the second step of the sequential evaluation that Malley was diagnosed with bilateral carpal tunnel syndrome after a nerve conduction study on November 3, 2008, but that, in the absence of any prior diagnosis, this condition had neither lasted nor could be expected to last for a continuous period of 12 months. Therefore, the ALJ found that the condition did not satisfy the duration requirements for a severe impairment. (Tr. 16).

Malley contends that the medical evidence supports her complaints of pain, neuropathy and arthritis in her hands for years, beginning as early as August 2006. She asserts that her carpal tunnel syndrome was diagnosed on April 22, 2008 and that, regardless of the date, the ALJ erred by focusing solely on her diagnosis, rather than on the long-term medical evidence of her symptoms. She contends that, if the ALJ's residual functional capacity assessment and hypothetical question had accurately

incorporated the alleged limitations in her hands, she could not perform the job of waitress because, as the vocational expert testified during examination by plaintiff's attorney, the work requires occasional fingering and frequent reaching and handling. (Tr. 54). Malley also argues that she could not perform even a sedentary job because of her problems with grasping, handling and fingering.

The ALJ posed a hypothetical to the vocational expert that accounted for plaintiff's age, education, work experience, and physical limitations, which the ALJ found to be credible. The vocational expert testified that such a person could perform plaintiff's past relevant work as a waitress.

Plaintiff was represented by counsel at the hearing, and her counsel also questioned the vocational expert. An ALJ's hypothetical question is defective and will not be allowed to stand unless it reasonably incorporated all of the disabilities recognized by the ALJ, "and the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." Bowling v. Shalala, 36 F.3d 431, 436 (5th Cir. 1994); accord Zimmerman v. Astrue, 288 F. App'x 931, 938 (5th Cir. 2008); Boyd v. Apfel, 239 F.3d 698, 706-07 (5th Cir. 2001).

In this case, plaintiff's counsel questioned the vocational expert and asked her about the effects of plaintiff's alleged additional impairment of moderate problems in grasping, handling and fingering during one-third of a work day.  Knight testified that such a claimant could not perform the job of a waitress.  However, the ALJ found that the record did not support such a requirement.

Concerning Malley's allegations of severe pain in her hands and inability to hold objects since the alleged onset date, the ALJ found that the medical evidence "did not support such limited functioning abilities as" she alleged.  Citing her allegation that she can only lift a pencil, the ALJ found that, when compared to the evidence of record, plaintiff's "description of the severity of the pain and physical limits have been so extreme as to appear implausible."  (Tr. 19).  The ALJ also found that, although Malley experiences some discomfort and limitations due to her chronic obstructive pulmonary disease and osteoarthritis that would impact her ability to perform work-related activities, her complaints of functional impairments so severe as to preclude all sustained work activity were not credible.  (Tr. 21).

The ALJ has the responsibility to evaluate the credibility of witnesses, <u>Masterson v. Barnhart</u>, 309 F.3d 267, 272 (5th Cir. 2002), and "credibility conclusions are 'precisely the kinds of determinations that the ALJ is best positioned to make.'"  <u>Spruill v. Astrue,</u> 299 F. App'x 356, 358 (5th Cir. 2008) (quoting <u>Falco,</u> 27 F.3d at 164).  Thus, the ALJ's

credibility evaluation is entitled to <u>considerable deference</u> by this court.  <u>McKnight v.</u>
<u>Astrue</u>, 340 F. App'x 176, 181 (5th Cir. 2009); <u>Bedford v. Astrue</u>, 236 F. App'x 957, 962
(5th Cir. 2007).  The ALJ's explanation of his reasons for finding plaintiff not entirely
credible is all that is required.  <u>James J. Flanagan Stevedores, Inc. v. Gallagher</u>, 219 F.3d
426, 430 & n.8 (5th Cir. 2000) (citing <u>Falco</u>, 27 F.3d at 163); <u>Godbolt v. Apfel</u>, No. 98-
1680, 1999 WL 179476, at *9 (E.D. La. Mar. 31, 1999) (Vance, J.).

Here, the ALJ explained at length why Malley's subjective symptoms and alleged
limitations were not credible, including that her subjective complaints were inconsistent
with the clinical and objective findings, which did not substantiate disabling
impairments; that the medical records revealed a motive for secondary gain when she
presented disability papers to her long-term primary health care provider, Nurse
Practitioner Paretti, to fill out, but Paretti declined because plaintiff was seeing multiple
doctors (Tr. 408); and that Malley stated in a written function report that she is the sole
provider for a handicapped adult daughter, takes care of her school-age granddaughter's
daily needs, cooks all three meals daily, does some light housework, takes care of two
pets, drives, shops and goes to church on Sundays.  (Tr. 168-70).

Substantial evidence supports the ALJ's finding that Malley had not suffered from
severe limitations in the use of both of her hands for a continuous 12-month period.

Therefore, the ALJ was not required to include such a limitation in his hypothetical question to the vocational expert. Carey, 230 F.3d at 143.

As plaintiff contends, the medical records show that at times between August 2006 and November 2008 she complained about pain, tingling and/or numbness in her hands, wrists and/or fingers. She specifically complained of difficulty grasping at a visit to the Earl K. Long neurology clinic on October 30, 2006, but physical examination revealed good strength and no atrophy bilaterally. (Tr. 196). During her admission to North Oaks Hospital on November 29, 2006 for exacerbation of her chronic obstructive pulmonary disease and asthma, her treating physicians noted that she had "numerous vague" complaints of myalgias, arthralgias and paresthesias in her legs, but no complaints or physical findings were noted regarding her hands or wrists. (Tr. 221, 223, 228). On September 27, November 1 and December 20, 2007, she was examined in the arthritis clinic at Earl K. Long Medical Center, where it was noted that she had a history of joint pain. She had aching wrists and pain in her finger joints, but there was no mention of any difficulty grasping or holding objects. (Tr. 471-73). On March 30, 2008, when she returned to the arthritis clinic, she complained of constant pain in both hands and said that she had dropped objects from her right hand. However, the examining physician found no objective signs of inflammation or evidence of inflammatory arthropathy or connective tissue disease. She was discharged from the arthritis clinic, with a note that

her osteoarthritis or fibromyalgia could be managed by her primary care provider and she should be evaluated by neurology with a nerve conduction study. (Tr. 470).

On March 30, 2008, R.P. Ceruti, M.D., whose signature appears to be the same as the signature on the arthritis clinic notes of the same date, completed a checklist, preprinted form opining, among other things, that Malley has episodic neuropathy in the hands, worse on the right, exacerbated by use, and that she cannot perform tasks that require significant use of her hands. (Tr. 400-01). The ALJ accorded little weight to the opinions on this form because they are conclusory and unsupported by appropriate diagnoses or narrative evaluations and because it is unclear the extent of treatment that Dr. Ceruti provided to plaintiff. (Tr. 20).

Mark Hamblin, M.D., an internist, found during a consultative examination on February 19, 2007 that her grip strength was normal "with easy ability to manipulate objects"and that her range of motion, motor strength, sensation and reflexes were normal throughout her extremities. His impression was arthritis or possibly mixed connective tissue disease. (Tr. 327).

Internist Adeboye Francis, M.D., performed another consultative examination on April 22, 2008, more than one year later. He also found that Malley had normal grip and grasp strength, range of motion, sensation, reflexes and muscle tone without atrophy. (Tr. 363). Although Dr. Francis diagnosed plaintiff with carpal tunnel syndrome and

osteoarthritis (Tr. 364), he opined in a Medical Source Statement of Ability to Do Work-Related Activities that she could frequently reach, finger, feel, handle, push and pull objects with either hand. (Tr. 367).

On July 21, 2008, Malley was examined at the Neurology Clinic at Earl K. Long Hospital. Her motor strength and reflexes in her upper extremities were normal and her finger joints were within normal limits, but she exhibited mild atrophy in a muscle in her right thumb. (Tr. 486). The only medical evidence of any decreased grip strength was a decrease in her left hand strength on November 3, 2008, after a nerve conduction study had confirmed her diagnosis of bilateral carpal tunnel syndrome. She had good grip strength in her right hand, but complained of pain. (Tr. 511).

These medical records constitute substantial evidence on which the ALJ could rely to find that plaintiff was not as severely limited in the use of both hands as she alleges. Accordingly, this assignment of error lacks merit.

<u>CONCLUSION</u>

The ALJ and the vocational expert did not misinterpret "light work." The ALJ was not required to include severe limitations on plaintiff's use of her hands in his hypothetical question to the vocational expert. Substantial evidence supports the ALJ's findings regarding plaintiff's residual functional capacity to perform light work, with the

restrictions noted in his opinion, and her ability to perform her past relevant work as a waitress.

## RECOMMENDATION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's complaint be DISMISSED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[10]

New Orleans, Louisiana, this ___30th___ day of January, 2012.

_____
JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[10]Douglass referred to the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.